IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARNETTE R.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 4225 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed her current application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§1381a, 1382c, almost two and a half years ago in December of 2020. (Administrative Record (R.) 289-98). She claimed that she had been disabled since June 1, 2003 (R. 289) due to: "Glaucoma Surgery, L4-L5 back surgeries, Migraines, Bipolar, Learning Disability." (R. 311). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on August 11, 2022, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on August 17, 2022. [Dkt. ##6-8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

The plaintiff has a bit of a history with the Social Security Administration, interspersed with some history with the Illinois Department of Corrections. She applied for DIB and SSI back on February 9, 2005, alleging she became disabled as of June 1, 2003. That claim was denied on August 2, 2005. (R. 153). A few months later, plaintiff was convicted and was incarcerated from November 1, 2005, through October 25, 2006. (R. 623, 668). For the last five months of her imprisonment, she was able to work full-time on a work release program. First, she was a cashier for 35 hours a week, and then a laborer for 40 hours a week. (R. 155). Once she was released from prison, she immediately filed another application for DIB and SSI on October 30, 2006 and, despite those work release jobs, claimed she had been unable to work since August 3, 2005, due to degenerative disc disease, left ankle sprain, alcohol and drug abuse, and bipolar disorder. (R. 153,156). That claim was denied on September 30, 2009. (R. 153-66). And, plaintiff was back in prison for three years after that, convicted of burglary/retail theft. (R. 596, 620, 623).

Once she was released on December 28, 2012 (R. 620, 623), the plaintiff quickly applied for benefits again on January 4, 2013. (R. 200). This time, she was granted benefits due to degenerative disc disease and depression on August 7, 2015, although, based on medical expert testimony, improvement was expected with appropriate treatment and her case was to be reviewed in 24 months. (R. 174-78). But, those benefits were terminated when plaintiff was convicted of aggravated battery and sent back to prison in November 2019. (R.494). During this stint in prison, she had a landscaping job that she said she loved. (R. 482). She also said that she "need[ed] to get ba[c]k on [her] SSI and just stay home with [her] kids and grandkids" (R. 503). Once she was

released after a year, she immediately reapplied, this time claiming she had been unable to work since June of 2003 – despite the landscaping job. (R. 289). It's the denial of that application that she is challenging.

**B.**

After an administrative hearing at which plaintiff[2] and a vocational expert testified, the ALJ determined the plaintiff had the following severe impairments: lumbar spondylolisthesis with spondylosis, and history of left shoulder surgery in 2017. (R. 17). The ALJ also found the plaintiff had a number of impairments – glaucoma, bipolar disorder, a learning disorder, migraine, history of left ankle anterior tibiofibular ligament strain, right carpal tunnel syndrome, depression, and anxiety – that were not severe. (R. 17-18). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19). The ALJ said he specifically considered Listings 1.15 and 1.16, and noted there was no evidence of a need for a mobility aid requiring the use of both hands. (R. 19). As for plaintiff's limitations due to his severe mental impairments, the ALJ found the plaintiff had mild limitations in the areas of understanding, remembering or applying information; in concentrating, persisting or maintaining pace; limitations in the area of interacting with others; and adapting or managing oneself. (R. 19-20).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

---

[2] The ALJ thoroughly explained plaintiff's right to representation at the beginning of the hearing (R. 52-53), but plaintiff said she'd "just rather do it on [her] own." (R. 53).

3

> the [plaintiff] cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. The [plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. The [plaintiff] can frequently reach with the left upper extremity. The [plaintiff] cannot work around hazards such as unprotected heights and exposed moving mechanical parts. The [plaintiff] cannot tolerate more than occasional, concentrated exposure to extreme heat, more than moderate noise, vibration, and fumes, noxious odors, dusts, mists, gases, and poor ventilation.

(R. 21). The ALJ then reviewed plaintiff's allegations. The plaintiff claimed that she went blind while in prison as a result of glaucoma. She also said she had back surgeries, and cannot sit, stand, or stoop for long periods of time. She uses a cane and claimed she cannot stand even 5 minutes before she has pain. The plaintiff also reported that her right leg is numb. She estimated that she could walk a half block, could sit for 10 minutes, and cannot lift anything over 5 pounds. (R. 19-20). The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20). The ALJ then reviewed the medical evidence, noting plaintiff's long history of back pain and also her past treatment for mental impairments. While incarcerated, plaintiff mental health assessments were unremarkable; GAF scores were indicative of mild symptoms or a slight impairment. A March 2021 MRI of the lumbar spine revealed grade 2 spondylolisthesis with spondylolysis of L5 on S1. An April 2021 consultative psychological examination revealed unstable and congruent mood, no indication of thought disorder, good response rate to calculations and a slow response rate to serial 7's, intact remote and immediate memory seemed, appropriate thought process. She was assessed with depression, moderate to severe and anxiety, moderate to severe with PTSD features. (R. 21).

Plaintiff also had an internal medicine consultative examination in April 2021. On examination, cranial nerves were intact, upper and lower limb strength was s 5/5, deep tendon reflexes were 2+, and sensation to pin prick in the right lateral leg was decreased. Gait was normal, negative straight leg raise was normal, and there was tenderness in the lumbar spine. Range of motion was normal throughout with the exception of some limitation of motion in the left shoulder and lumbar spine. Plaintiff was noted to use a cane on and off. Grip strength was 5/5 in both hands. She was fully oriented with normal memory, appearance, and behavior; her affect was normal, and there were no signs of depression, agitation, irritability, or anxiety. (R. 21).

The ALJ noted that at a May 2021 exam, plaintiff's gait was normal and she had some lumbar spine tenderness, but intact sensation and equal bilateral strength. She noted to be anxious but had appropriate mood, affect, insight, and judgment. (R. 21). In April 2021, plaintiff was found to have significant glaucoma damage, and needed eyedrops and presurgical evaluation. She underwent glaucoma evaluation in December 2021, and was assessed with mild to moderate OD, end stage OS/NLP; she was continued on medications and cataract surgery was discussed. (R. 21-22).

As for medical opinions, the ALJ found the opinions from the state agency reviewing physicians to be generally persuasive, but felt the record supported a limitation to light work rather than medium as found by the reconsideration reviewing physician. (R. 22-23). The ALJ found the opinion from plaintiff's treating physician that plaintiff could only occasionally perform tasks with depth perception, frequently perform tasks with field of vision, and had no other limitation, to be generally persuasive. (R. 23).

Based on testimony from the vocational expert, the ALJ then found that plaintiff was able to perform the requirements of occupations such as a folder ( DOT #369.687-018; 109,000 jobs in the national economy); light assembler (DOT #729.684-054; approximately 95,000 jobs nationally); and office helper (DOT#239.587-010; 85,000 jobs in the national economy). (R. 24). Accordingly, the ALJ found the plaintiff not disabled under the Act. (R. 24).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Bakke*, 62 F.4th at 1066. To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to allow the court to trace the path

6

of the ALJ's reasoning from evidence to conclusion. *Bakke*, 62 F.4th at 1066; *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). *Accord Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis.").[3]

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can easily hop across with barely a splash.[4] The Seventh Circuit has called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their

---

[3] In other contexts, the court has held that it may affirm on any basis appearing in the record. *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

[4] A perfect example is the aforementioned *Jarnutowski.* There, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning, 748 F.4th at 774-77, while a third judge, dissenting, thought she did. 748 F.4th at 77-79. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[5] The ALJ has done enough here.

### III.

The plaintiff makes two arguments for overturning the ALJ's determination that she was not disabled and not entitled to benefits. First, she complains that the ALJ's analysis of whether her

---

[5] Prior to *Sarchet*'s "logical bridge" language, the Seventh Circuit generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79.

In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

condition met or equaled a listed impairment at Step 3 was far too brief. Second, she contends that the ALJ failed to acknowledge that plaintiff was incarcerated and did not have access to more extensive medical care. Any other arguments plaintiff might have raised are deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020).

**A.**

First, the plaintiff complains that the ALJ's listing analysis is a mere two sentences. And, indeed, the ALJ wrote:

> All Listings have been considered in making this determination, including Listing 1.15 and 1.16.

(R. 19). While the Seventh Circuit has said in the past that "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing," *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004), the above is not all the ALJ wrote; his decision continued from there. *See Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020)(". . . the ALJ's more thorough discussion—although located with the discussion of [plaintiff's] RFC—explained what the evidence revealed about [plaintiff's] condition and symptoms."); *see also Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021)("the ALJ's discussion of the medical evidence in the section of his decision addressing [plaintiff's] RFC . . . is quite detailed, and it easily supports the ALJ's step-three rejection of [plaintiff's] claim of per se disability under Listing 1.04.") After review of the ALJ's decision – as opposed to an excised snippet of it – and the medical record, it's safe to say that his conclusion that plaintiff was not disabled at Step 3 was supported by "substantial evidence."

When the Step 3 section is two sentences long, it's always going to draw the fire of a plaintiff's attorney. After all, that's the kind of thing that the court rejected in *Minnick*, 775 F.3d at 935 ("The evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing."). But sometimes, when the path from the record to the conclusion is obvious, no more is required. *See, e.g., Erica v. Saul*, No. 20 C 1106, 2020 WL 6381364, at *4 (N.D. Ill. Oct. 30, 2020)("... the ALJ did not say much, but there was not much to say. The listing requires three qualifying tests; plaintiff presents only two. There was no need for some convoluted, intricate analysis."). And, under SSR 17-2p, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Theodoro K. v. Kijakazi*, No. 21 C 4491, 2022 WL 17068121, at *3 (N.D. Ill. Nov. 17, 2022)("Accordingly, an ALJ's step three analysis, even if cursory, does not warrant remand if the ALJ's decision otherwise fulsomely assesses a claimant's physical and mental limitations."); *Lisa S. v. Saul*, No. 19 C 862, 2020 WL 5297028, at *8 (N.D. Ill. Sept. 4, 2020)("Claimant states that the ALJ's brevity on this issue requires remand, but SSR 17-2p makes clear that 'a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.'"); *Sarah M. v. Kijakazi*, No. 21 CV 2454, 2022 WL 3139566, at *6 (N.D. Ill. Aug. 5, 2022)("The support for that conclusion is found both in the ALJ's step-three analysis and in his more thorough RFC discussion."). Simply put, the ALJ's discussion of the medical evidence made it more than clear that plaintiff's condition did not meet or equal a listed impairment.

Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)); 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina) both have similar "Paragraph D" criteria that, essentially, require a plaintiff to not only be unable to walk without an assistive device but for their condition to leave them without the use of a free hand:

> 1.15D  Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
>> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(I)); or
>>
>> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
>>
>> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).
>
> 1.16D  Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
>> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(I)); or
>>
>> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see

    1.00C6e(ii)).

In other words, a plaintiff will be found disabled at Step 3 if she needs both arms to help her walk, or one arm to help her walk and cannot use her other arm to work. As the ALJ said – and, again, as his discussion of the evidence made plain – plaintiff's condition neither meets nor equals these listings.

    In order to mount a successful Step 3 challenge, a plaintiff has to show that she meets the criteria for that listing. *Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020). It's not entirely clear from plaintiff's brief why she thinks she meets these listings, but it would seem she relies entirely on her use of a cane. But, as the record and the ALJ both make clear, there is no documented medical need for a cane. The ALJ thoroughly evaluated this point throughout his decision:

> She returned to reestablish care after incarceration in March 2021 . . . On examination, her gait was normal, and she had some lumbar spine tenderness but sensation was intact and strength was equal bilaterally (Exhibit C11F/9). (R. 20).
>
> The claimant also underwent internal medicine consultative examination in April 2021 . . . She had normal gait, negative straight leg raise, and tenderness in the lumbar spine (Exhibit C13F/3). (R. 21).
>
> At a follow-up in May 2020 . . . On examination, her gait was normal and she had some lumbar spine tenderness but intact sensation and equal bilateral strength (Exhibit C18F/8). (R. 21).
>
> She testified that she regularly uses a cane, and that the cane was prescribed in the past. However, treatment records do not support the degree of limitation alleged. She reported using an assistive device on consultative examination (Exhibit C12F/2; C13F/1). However, on consultative examination, she only used the cane off and on (Exhibit C13F/6). Additionally, she was able to walk 50 feet without assistance (Exhibit C13F/6). Treatment records regularly revealed normal gait, intact sensation, and 5/5 strength, and do not generally discuss the need to use a cane (Exhibit C11F/7-9; C18F/8). (R. 22).

The overarching theme here – and one the plaintiff completely ignores – is "normal gait . . . normal gait . . . normal gait." A person with a "normal gait" does not meet these listings. Even a "perfunctory" analysis would be sufficient in a case like this one.

### B.

Next, plaintiff claims that the ALJ put too much weight on the lack of medical evidence to support her disability claim and "failed to acknowledge that [she] was incarcerated and did not have access to more extensive medical care." [Dkt. #14, at 7]. It's a somewhat curious argument. One supposes that the plaintiff would like to be able to establish entitlement to Supplemental Security Income without having to provide evidence to show she is unable to work. But that is not how Congress designed the system to work. The plaintiff has the burden of proving she is disabled "by producing medical evidence." *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir.2004). There may be many reasons, valid or not, for a "sparse record." But if there is a lack of evidence, that's not the fault of the ALJ; the plaintiff "bears the risk of uncertainty." *Eichstadt*, 543 F.3d at 668.

Even so, the plaintiff mischaracterizes the ALJ's decision. The ALJ didn't "fail to acknowledge" plaintiff was incarcerated. He mentioned it several times. (R. 19, 20, 22). It was impossible to ignore as two of the plaintiff's terms of incarceration produced about 160 pages of medical records (R. R. 473-539, 587-683), thus undermining plaintiff's claim that a lack of treatment could be attributed to her incarceration. The records from her most recent incarceration show regular therapy sessions interrupted only by plaintiff's preference for one therapist over another. (R. 495, 496). When she complained of migraines, she received treatment. (R. 519-21). When she

13

complained of vision problems, she received treatment. (R. 528-34). One thing she did not complain about, as the ALJ noted, (R. 20), was her back.

Although the notes focused mainly on plaintiff's mental health, every single one, whether from doctors, or psychiatric mental health nurse practitioners, or advanced registered nurse practitioners, noted that plaintiff's gait was appropriate. (R. 479, 483, 487, 491, 504, 508, 512, 516). Those notes also reveal that plaintiff was working a landscaping job. (R. 482). Even if one were to speculate that the treatment available to plaintiff was not at the level that would be available to someone who worked every day and had health insurance, it certainly does not sound like plaintiff had no access to treatment. Quite the contrary. And it certainly does not sound like she is someone who needs a cane to get around due to a disabling back impairment. The ALJ's assessment was not unreasonable.

The ALJ also noted that, outside of prison, when plaintiff had exams or treatment, the findings weren't as dire as she claims. A March 5, 2021 MRI showed grade 2 – out of 5 – spondylolisthesis of L5-S1. (R. 21, 546). Physical exam at that time revealed mid and paraspinal tenderness, but normal gait, normal sensation, and normal strength. (R. 20, 548). Given the rather unremarkable findings, treatment was conservative: Ibuprofen, warm compress, and stretching. (R. 20, 548). And, as the ALJ also noted, such results were the norm; treatment records regularly revealed normal gait, intact sensation, and 5/5 strength, and made no mention of any need for a cane. (R. 22).

"This is . . . not a case in which an ALJ made a simple assumption that people who do not regularly visit doctors can't have a serious problem." *Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021). The ALJ did not simply say "lack of treatment" and call it a day as the plaintiff inaccurately

charges in her brief. Far from drawing improper inferences, *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021), the ALJ conducted a thorough review of the record and discussed the mostly unremarkable findings revealed by it. That is something the plaintiff ought to have done before bringing her case to court. It bears repeating that it is the plaintiff's burden to prove she is disabled with medical evidence, and she has to point that evidence out to the court. *Karr*, 989 F.3d at 513 (plaintiff must "identify[ ] ... objective evidence in the record" that she is disabled).

Yet, the plaintiff does not cite a single page of the medical record in her brief. She focuses entirely on "her" testimony from her administrative hearing. [Dkt. #14, at 2-3, 8]. But that is simply inadequate. *See Gedatus*, 994 F.3d at 905(" . . . the ALJ recognized that he needed objective medical evidence to make reasonable conclusions about the intensity, persistence, and effects of her [symptoms], but this evidence was absent."); *Eichstadt*, 534 F.3d at 668 ("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, ...."); *Scheck*, 357 F.3d at 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...."); 20 C.F.R. § 416.912(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). When a plaintiff's brief is completely devoid of any citation to medical evidence that she is unable to work, it's a case that probably should not have been brought to court in the first place. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987)("The filing of an appeal should never be a conditioned reflex.").

It bears repeating that in any context, simply "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). *See also Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *Stromberg Motor Devices Co. v. Zenith Carburetor Co.*, 254 F. 68, 69 (7th Cir. 1918). *Accord Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018); *Bowers v. Dart*, 1 F.4th 513, 520 (7th Cir. 2021); *INS v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984); *Planned Parenthood of Indiana and Kentucky v. Box*, 949 F.3d 997, 998 (7th Cir. 2019); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *Malik v. Holder*, 546 F. App'x 590, 593 (7th Cir. 2013); *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.2009). Briefs in Social Security cases are not exempt from this fundamental rule.

## IV.

## CONCLUSION

The defendant's motion for summary judgment [Dkt. # 15] is granted and the ALJ's decision is affirmed.

ENTERED: _/s/ Jeffrey Cole_
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/21/23